UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
FRANTZ PAMPHILE,

               Plaintiff,

-against-

TISHMAN SPEYERS PROPERTIES,
L.P., AND 666 FIFTH AVENUE, L.P.,

               Defendants.
----------------------------------------------------X
TOWNES, U.S.D.J.

MEMORANDUM
AND ORDER

03CV5964 (SLT) (LB)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 2 8 2005 ★
TIME A.M. P.M.

*Pro Se* Plaintiff Frantz Pamphile brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, for the discrimination he alleges he suffered as an employee of defendants Tishman Speyers Properties, L.P., and 666 Fifth Avenue, L.P. (collectively, the "Defendants"). Defendants move for summary judgment dismissing the complaint. Based upon all submissions of the parties, and for the reasons stated below, Defendants' motion is granted in full.

I.    *Statement of Facts*

Frantz Pamphile ("Plaintiff" or "Pamphile"), a man of Haitian descent, was hired by Defendant 666 Fifth Avenue, L.P., in early 1995. (Def. 56.1 Stat. ¶ 4.) As a porter/waxer in a New York City office building, his responsibilities included waxing floors, cleaning lobbies and elevators, removing trash, and performing miscellaneous tasks at the direction of the foreperson assigned to his building. (Def. 56.1 Stat. ¶ 4.) On December 27, 2001, Plaintiff was provided

with a copy of the General Rules for Hourly Employees ("Work Rules") of defendant Tishman Speyers Properties, L.P. (Def. 56.1 Stat. ¶ 5.)

*October 9 Incident*

Though Plaintiff represented to the Court that he has "been working for fifteen years" and "never got [*sic*] problem," he admits that on October 9, 2002, he was involved in a physical altercation at work with a fellow porter, Diamond Ouy ("Ouy") (the "October 9 Incident"). (Pennay Aff. Ex. C ("Pamphile Dep.") at 109-110; Pennay Aff. Ex. D.) Though Plaintiff claims the two were merely engaging in "horseplay," he admits that such conduct nevertheless violated the Work Rules. (Pamphile Dep. At 126; Penney Aff. Ex. B1 (Work Rules).) Plaintiff and Ouy were both suspended for this infraction. (Pennay Aff. Exs. B4, B5.)

On October 25, 2002, Plaintiff accepted Defendants' offer of settlement in connection with the October 9 Incident in a letter containing the following language:

> In consideration for your return to work, it is understood and agreed that you are placed on final warning whereby any future infractions or violations of rules, regulations, policies, procedures, expressed or otherwise directed, or performance deficiencies of any nature will result in termination.

(Penney Aff. Ex. B2.) Plaintiff understood this letter to mean that he would be terminated for any further violations. (Pamphile Dep. at 141.) He did not believe that he received this warning as a result of discrimination. (Pamphile Dep. at 144.)

*January 16 Incident*

On January 16, 2003, Plaintiff arrived over an hour late to work without permission or advanced notice, as required by the Work Rules (the "January 16 Incident"). (Pamphile Dep. at 52.) The Work Rules provide that

> Employees unable to report to work for any reason <u>must personally</u> notify the office a minimum of two (2) hours before their scheduled shift start time. . . .Please be certain to get the name of the person you speak with in case of discrepancies.
>
> **<u>IT IS THE EMPLOYEE'S RESPONSIBILITY TO ENSURE THIS CALL IS MADE!</u>**

(Pennay Aff. Ex. B1 at 3 (emphases in original).) Though Plaintiff alleges that he called to inform Defendants of his anticipated lateness, it is undisputed that Plaintiff did not do so two or more hours prior to the beginning of his shift, nor did Plaintiff personally speak to his foreperson or obtain the name of the person with whom he allegedly spoke. (Pamphile Dep. at 150, 157.) Defendants' security log book had no record of Plaintiff calling on January 16, 2003. (Pennay Aff. Ex. B8.)

It is undisputed that, when Plaintiff arrived at work on January 16, 2003, he requested that he be granted overtime work for the upcoming weekend. (Pennay Aff. Ex. E.) Plaintiff's request was denied, and he was told by foreperson Sanjie Duraku ("Duraku") that his failure to report to work on time prevented Defendants from knowing whether he was interested in overtime. (Def. 56.1 Stat. ¶ 14; Pamphile Dep. at 182.) Though the parties dispute what precisely was said during this discussion, it is undisputed that Plaintiff "confronted" Duraku; that Plaintiff was "arguing" with Duraku; that an employee of Albanian descent was scheduled to

3

work the overtime shift that Plaintiff considered his; and that Plaintiff claims Duraku gave preferential treatment to Albanian and Yugoslavian employees. (*See* Plaintiff's complaint (the "Complaint") at 4-5; Pamphile Dep. at 168-9, 182; Pennay Aff. Ex. E at 1.)

Plaintiff was immediately suspended, and, as of January 27, 2003, terminated. (Pennay Aff. Ex. B6; Pamphile Dep. at 212.) Plaintiff grieved the termination with his union and was unsuccessful in the arbitration that ensued. (Pennay Aff. Ex. B10 at 8-10 (Arbitration Opinion and Award finding, *inter alia*, that Plaintiff knew he was on a "slipperly slope" at the time of the January 16 Incident; that he failed to report his late arrival in conformance with the Work Rules; and that Plaintiff has shown that there was just cause for his discharge).)

*Plaintiff's Claims*

On February 4, 2003, Plaintiff filed a charge with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC") (Plaintiff's "Charge"), alleging that Defendants discriminated against him on the basis of his national origin. He complained that Duraku, an Albanian, was related to at least one other Albanian employee, and that she gave him and other Albanian and Yugoslavian employees a disproportionate amount of the available overtime opportunities. (Pennay Aff. Ex. E at 1.) Plaintiff further alleged that "other workers who are Albanian are not sent home when they are late," and that he was one of only two Haitian employees. (*Id.*) Plaintiff's Charge acknowledges that his lateness caused him to be overlooked for overtime. (*Id.*) On July 24, 2003, the NYSDHR issued a finding that there was no probable cause to believe that Defendants

4

engaged in unlawful discriminatory practices. (Pennay Aff. Ex. F.) On September 16, 2003, the EEOC adopted those findings. (Pennay Aff. Ex. G.)

On November 21, 2003, Plaintiff filed the instant Complaint. Although his Charge alleged discrimination solely on the basis of national origin, his Complaint alleges discrimination on the basis of only "race" and identifies his race as Haitian. (*Compare* Complaint *with* Pennay Aff. Ex. E.) The Complaint alleges that Duraku gave overtime work to Albanian and Yugoslavian employees instead of him despite his seniority, and that Bedri Mulaj, an employee of Defendants and relative of Duraku, stole three laptop computers at work and yet remains employed by Defendant. (Complaint at 4-5.)

At his deposition, Plaintiff revealed that he alleges discrimination not only on the bases of national origin and race, but also the basis of a disability. Plaintiff testified that, on account of an oversight, he failed to indicate all three bases in his Charge and his Complaint. (Pamphile Dep. at 285.) In support of his claim of discrimination on the basis of disability, Plaintiff alleges that Duraku told him that he did not see well enough to perform his job. (Letters from Pamphile to Pennay of 8/4/05 and 8/17/05; Pamphile Dep. at 335.)

Defendants move for summary judgment, arguing that Plaintiff both fails to make a prima facie case of discrimination and that he fails to rebut their proffered non-discriminatory reason for his termination.

II. *Discussion*

Summary judgment is appropriate where "there is no genuine issue as to any material fact" such that the moving party is entitled to "judgment as a matter of law." Fed. R. Civ. P.

5

56(c). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of fact is "'genuine'. . .if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (citation omitted). Because the moving party bears the burden of showing that there are no genuine issues of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), "the inferences to be drawn from the underlying facts. . .must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold*, 369 U.S. 654, 655 (1962); *see also Johnson v. Queens Admin. for Children's Servs.*, 2006 WL 229905, at *4 (E.D.N.Y. Jan. 31, 2006) (Irizarry, *J.*) ("Even a *pro se* party is not exempt from the requirements of summary judgment motions.") (citation omitted).

### A.  *Exhaustion*

"A district court only has jurisdiction to hear Title VII claims that are either included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Hous. Preservation and Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993) (citations omitted). "This exhaustion requirement is an essential element of Title VII's statutory scheme," the purpose of which is to "encourage settlement of discrimination disputes through conciliation and voluntary compliance." *Id.*

"In determining whether a particular claim is reasonably related to the plaintiff's EEOC complaint, 'we look not merely to the four corners of the often inarticulately framed charge, but

6

take into account the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Gomes v. Avco Corp.*, 964 F.2d 1330, 1334 (2d Cir. 1992) (citations omitted). In *Gomes*, the court permitted the plaintiff to amend his complaint to include a disparate treatment claim. *Id.* at 1332-1334. The court reasoned that, because the EEOC complaint alleged discrimination on the basis of national origin, the EEOC investigation of his charges should have encompassed his disparate impact allegations. *Id.*

Because the Court must interpret Plaintiff's *pro se* Complaint as raising "the strongest arguments that [it] suggest[s]," *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (citations omitted), and because Plaintiff appears to use the terms "race" and "national origin" interchangeably, Pamphile Dep. at 286, the Court will consider both Plaintiff's claim of discrimination on the basis of race as well as his claim of discrimination on the basis of national origin. However, Plaintiff's claim that he suffered discrimination on the basis of a disability is wholly unrelated to his race and national origin and therefore, that claim is unexhausted.[1]

### B. *Race and National Origin Claims*

Discrimination claims are subject to the well-known burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell*, if plaintiff is able

---

[1] The Court notes that, in any event, Plaintiff's claim of discrimination on the basis of a disability is without merit. To withstand Defendants' motion for summary judgment of a claim brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, Plaintiff would have to show that "(1) his employer is subject to the ADA; (2) he is disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *King v. Town of Wallkill*, 302 F. Supp. 2d 279, 289 (S.D.N.Y. 2004) (citations omitted). Plaintiff's allegations of hearsay comments made by his supervisor about his vision does not satisfy this standard.

to establish a prima facie case of discrimination, the burden then shifts to the employer. *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996). If the employer can show "a legitimate, clear, specific and non-discriminatory reason" for the adverse action, *id.*, the plaintiff assumes a new burden, that of showing that the employer's proffered reasons are a pretext and that "more likely than not the employee's membership in a protected class was the real reason for the adverse action." *Murphy v. Bd. of Ed. of the Rochester City Sch. Dist.*, 273 F. Supp. 2d 292, 301 (W.D.N.Y. 2003) (*quoting Holt*).

1. *Prima Facie Case of Discrimination*

To make out a prima facie case of discrimination on the basis of race or national origin, Plaintiff must show (1) that he is within a protected class, (2) that he was qualified for and satisfactorily performing the job at issue, (3) that he was subject to an adverse employment action, and (4) that this action occurred under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *Szostak v. Modern Landfill, Inc.*, 2001 WL 18323606, at *3 (W.D.N.Y. Dec. 18, 2001). Assuming *arguendo* that Plaintiff has met the first three factors, his claims must nevertheless fail on account of his failure to demonstrate that his termination occurred under circumstances indicating a discriminatory motive.

a. *Inference of Discrimination*

Courts "must...carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture... An inference is not a suspicion or a guess." *Bickerstaff v. Vassar College*, 196 F.3d 435, 448 (2d

Cir. 1999) (citation omitted). However, Plaintiff's submissions contain no evidence from which this Court can draw a reasonable inference of discrimination, be it on account of his national origin or race. Plaintiff's allegations include, *inter alia*, that Duraku gives priority treatment to Albanians and Yugoslavians; that Duraku's brother-in-law stole three laptop computers, was seen on camera with gloves and a knife in his hand, and remains employed by Defendants while both an African-American and white employee who were accused of stealing were fired immediately; that an Albanian employee is routinely late to work and is not reprimanded; that Albanians who are late nevertheless qualify for overtime; that Duraku made changes to the overtime schedule in favor of Albanian and Yugoslavian employees; and that an American employee used foul language and escaped reprimand. (*See, e.g.*, Complaint at 5; Pamphile Dep. at 86-87, 162, 169, 200, 205-206, 301; Letters from Pamphile to Pennay of 8/4/05 and 8/17/05).

However, Plaintiff admitted that he did not know whether any other employees' late arrivals were excused or whether any other employees failed – as Plaintiff did – to follow the procedures for arriving to work late. (Pamphile Dep. at 184, 200.) Furthermore, Plaintiff was not aware of whether any other employee was disciplined for infractions of the Work Rules. He supported the overwhelming majority of his allegations of co-worker misconduct with hearsay evidence of office gossip, references to "potential eyewitnesses" who have not submitted affidavits or been deposed, and invitations to contact union delegates and to investigate Defendants. (Pamphile Dep. 230-1, 201-305, 308; Letters from Pamphile to Pennay of 8/4/05 and 8/17/05; Complaint at 5.) These offerings do not constitute "affirmative evidence" in support of Plaintiff's claim. *Anderson*, 477 U.S. at 257.

9

As Plaintiff has presented no evidence (beyond his own beliefs and inadmissible hearsay[2]) of the disciplinary files of any of the Albanian employees (or any other evidence in support of his claim that they received preferential treatment at Plaintiff's expense) he has failed to create a genuine issue of material fact in his prima facie case of discrimination. *Kerzer v. Kingly Mfg.*, 396 F.3d, 400 (2d Cir. 1998) ("Conclusory allegations, conjecture, and speculation, however, are insufficient to create a genuine issue of fact."); *Johnson*, 2006 WL 229905, at *4 ("It is insufficient for a [*pro se*] plaintiff to try to defeat a motion for summary judgment by relying upon conclusory allegations since such allegations do not create a genuine issue of material fact.") (citation omitted).

2. *Legitimate Non-Discriminatory Basis for Termination*

Even if Plaintiff were able to state a prima facie case of discrimination on either or both proffered bases, his claims would nevertheless fail for want of a rebuttal to the legitimate non-discriminatory reasons for his termination. Having offered the October 9 and January 16 Incidents as "legitimate, clear, specific and non-discriminatory reason[s]" for Plaintiff's termination, Defendants would in any event shift the burden to Plaintiff to show evidence indicating that the proffered reasons for his termination are a pretext for discrimination, a

---

[2] Hearsay evidence is inadmissible on a motion for summary judgment. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by trial court in ruling on [a] motion for summary judgment") (citations omitted); *Fridman v. City of New York*, 183 F. Supp. 2d 642, 646 n.2 (S.D.N.Y. 2002) (granting summary judgment where plaintiff submitted newspaper articles and a City Council hearing transcript and the out-of-court speakers "were neither under oath nor making admissions against their interests"); *Corrigan v. New York Univ. Med. Ctr.*, 606 F. Supp. 345, 348 (S.D.N.Y. 1985) ("Hearsay. . .cannot be used under Rule 56(e) to stave off summary judgment.").

showing that Plaintiff is unable to make. *Murphy*, 273 F. Supp. 2d at 301. Plaintiff has given the Court no evidence at all in support of a conclusion that the reason for Plaintiff's termination was more likely discrimination than the disciplinary actions taken against him. As such, his Title VII claims of discrimination on the bases of race and national origin are dismissed.

III. *Conclusion*

Defendants motion for summary judgment is hereby granted. Defendants have shown that Plaintiff was involved in misconduct on two occasions, which Plaintiff does not dispute. When Plaintiff failed to contact Defendants within two hours of the commencement of his shift through the required channels, he understood that the violation was grounds for his termination. Beyond his own testimony, Plaintiff has presented no evidence that discrimination on the basis of his race or national origin played a role in his termination. For these reasons, his Title VII claims must fail. Because Plaintiff failed to exhaust his claim of discrimination on the basis of his alleged disability, that claim is also dismissed. The Clerk of the Court is directed to close the case.

**SO ORDERED.**

SANDRA L. TOWNES
UNITED STATES DISTRICT JUDGE

Dated: June 27, 2006
Brooklyn, NY